# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| IMAGE MASTERS, INC., *et. al.,* | : | Main Case No. 07-21587REF |
| Debtors | : | Jointly Administered |
| | : | Case No. 07-21586REF |
| | : | Case No. 07-21587REF |
| | : | Case No. 07-21588REF |
| | : | Case No. 07-21589REF |
| | : | Case No. 07-21590REF |
| | : | Case No. 07-21591REF |

------------------------------------------------------------------------

| | | |
|---|---|---|
| LYNN E. FELDMAN, as Chapter 7 | : | |
| Trustee of the Estate of Image Masters, | : | |
| Inc., <u>et</u>. <u>al.</u>, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adversary No. 09-2092 |
| | : | |
| CHASE HOME FINANCE, | : | |
| CITIMORTGAGE, INC., | : | |
| COUNTRYWIDE HOME LOANS, | : | |
| INC., FIFTH THIRD BANK, | : | |
| GMAC MORTGAGE CORP., | : | |
| PROVIDENT FUNDING ASSOCIATES, | : | |
| L.P., SAXON MORTGAGE, INC., | : | |
| SOVEREIGN BANCORP, INC., | : | |
| SUNTRUST BANK, WACHOVIA BANK, | : | |
| N.A. and WELLS FARGO HOME | : | |
| MORTGAGE, | : | |
| Defendants | : | |

1

# MEMORANDUM OPINION

## I. INTRODUCTION

On September 18, 2007, Image Masters, Inc., OPFM, Inc., Mortgage Assistance Professionals, Inc., Mortgage Assistance Professionals, Inc. II, Discovered Treasures, Inc., and Dividit, Inc (together "Debtors") each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. On September 19, 2007, Lynn E. Feldman, Esquire, was appointed to serve as the Chapter 7 Trustee of the Debtors' bankruptcy estates ("Trustee"). She moved for an Order Directing Joint Administration of these bankruptcy cases, which motion I granted on October 4, 2007. My October 4, 2007 Order consolidated these six cases for procedural and administrative purposes only and directed that they be jointly administered. For years preceding their bankruptcy filings, Debtors participated through and with their principal in a substantial Ponzi scheme, defrauding many of their customers, homeowners, and investors.

With no allegation that the Defendants in this adversary proceeding participated in or knew anything about Debtors' bad deeds, Trustee filed an adversary complaint against Defendants on March 16, 2009, based upon the Ponzi scheme. Trustee seeks to avoid various transfers, which aggregate $23,552,441.36, made by Image Masters to the Defendants on the grounds that the transfers constitute fraudulent or

2

preferential transfers under both or either of the United States Bankruptcy Code and the

Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA").[1] Defendants filed Motions

To Dismiss the Complaint,[2] in which they argue that the Complaint fails to state a claim

for avoidance of the transfers under theories of either constructive or actual fraud, fails to

plead fraud with particularity, and fails to join necessary parties.  I conducted oral

argument on the Motions in July 2009, the briefs have now been filed, and the Motions

are therefore ready for disposition.  This Memorandum Opinion constitutes my findings

and conclusions of law that the Trustee's Complaint fails to state a claim for avoidance of

the transfers based upon constructive or actual fraud that are plausible on its face, fails to

allege fraud with the required particularity, and fails to join necessary parties.

---

[1] The Complaint contains eight counts.  Count I seeks to avoid certain transfers as fraudulent transfers under 12 Pa. C.S. §5104(a) and 11 U.S.C. §544.  Count II seeks to avoid certain transfers as fraudulent transfers under 12 Pa. C.S. §5105 and 11 U.S.C. §544.  Count III seeks to avoid certain transfers as fraudulent transfers under 11 U.S.C. §548(a)(1)(A).  Count IV seeks to avoid certain transfers as fraudulent transfers under 11 U.S.C. §548(a)(1)(B).  Count V seeks to avoid certain transfers as preferential transfers under 11 U.S.C. §547.  Count VI seeks recovery of certain transfers under 11 U.S.C. §550.  Count VII seeks disallowance, under 11 U.S.C. §502(d), of any proofs of claim filed by Defendants against Debtors until Defendants pay the Trustee the amount of the allegedly avoidable transfers.  Finally, Count VIII is titled "Reservation of Rights" and seeks to reserve Trustee's rights to commence other causes of action against Defendants, to amend the Complaint, and to assert objections to any proofs of claim that Defendants might file against Debtors or their estates.

[2] Defendants move to dismiss the Complaint pursuant to Fed. R. Bankr. P., Rules 7009, 7012, and 7019, which make Fed. R. Civ. P., Rules 9, 12, and 19 applicable to adversary proceedings in bankruptcy cases.

# II.  FACTUAL BACKGROUND AND HISTORY OF THE PONZI SCHEME

The Debtors are related entities and were, prior to the filing of their bankruptcy petitions, wholly owned, controlled and operated by Mr. Wesley Snyder ("Snyder").  The Trustee's Complaint alleges that Snyder used the Debtors to orchestrate a multi-million dollar Ponzi scheme that defrauded more than 800 homeowners and investors out of millions of dollars.   Snyder's scheme was called a "Wrap-Around Equity Slide Down Discount Mortgage Program."

As part of his scheme, Snyder asked homeowners to refinance their existing mortgages through conventional mortgage loans with Defendants ("conventional loans"). Snyder induced the homeowners to use the conventional loan refinancings to "cash out" the equity in their homes in a first closing by borrowing more money from Defendants than they needed to pay off the existing mortgages. At a second, subsequent closing, after the first closing with Defendants, Snyder persuaded the homeowners to give Image Masters the excess funds they had received from their conventional loan refinancings with Defendants (the "wrap amount").   The homeowners then signed new notes and mortgages in favor of Image Masters (together and separately, the "Image Masters Notes and Mortgages") in the same amount as their conventional loans with the Defendants, but at lower interest rates and, in some cases, for shorter terms than the conventional loans.

4

As a result, the monthly payments due by the homeowners under the Image Masters Notes

and Mortgages were lower than the monthly payments due to Defendants under their

conventional loans.  The mortgages securing the conventional loans were properly

recorded in the appropriate Recorder of Deeds Offices, but the Image Masters Mortgages

were never recorded.

The Image Masters Notes and Mortgages did not eliminate the mortgages

securing Defendants' conventional loans.[3]  Instead, the Image Masters Mortgages

purported to "wrap around" the Defendants' mortgages.  In addition, Image Masters

contractually assumed responsibility for paying the homeowner's monthly payments to

the Defendants.  On a monthly basis, therefore, the homeowners paid Image Masters the

monthly payments required under the Image Masters Notes and Mortgages.  In turn,

Image Masters was obliged under its agreements with the homeowners to pay Defendants

the monthly payments owed by the homeowners to Defendants under the conventional

loans.  Neither Snyder, Image Masters, nor any of the other Debtors, however, had a

direct relationship with the Defendants obligating them to make payments to Defendants

_____

[3] The Image Masters Mortgages expressly recognized that the conventional mortgages
had priority over them and required that the homeowners keep the mortgages securing the
conventional loans in full force and effect for their entire terms.  Snyder also had the
homeowners sign subrogation agreements that acknowledged that the conventional loans
mortgages were first liens on the homeowners' properties and that all of the funds secured by the
Image Masters Mortgages had not been advanced to the homeowners. In the subrogation
agreements, the homeowners also authorized and empowered Image Masters to disburse funds
secured by the Image Masters Mortgages and to pay them to Defendants to be applied to the
regular monthly payments of principal and interest owed to Defendants by the homeowners under
the conventional loans.

on the homeowners' conventional loans. The Defendants were not parties to any of the Image Masters Notes and Mortgages or subrogation agreements, and the Complaint does not aver that any of the Defendants participated in, or were actually aware of, the Image Masters Notes and Mortgages or the subrogation agreements.

Snyder informed the homeowners that the "wrap amounts" would be either (1) used by Image Masters immediately to pay down the homeowners' conventional loans or (2) invested by Image Masters, with the proceeds being used by Image Masters to pay the difference between what the homeowners paid Image Masters and what the homeowners' were obligated to pay to the Defendants on the conventional loans. No profits were actually earned on the "wrap amounts," and Snyder did not use the "wrap amounts" to reduce the principal balances owed by the homeowners on the conventional loans. Snyder used the payments he received from new homeowners to keep preexisting homeowners' conventional loans with Defendants current.[4]

To perpetuate this illegal scheme, Image Masters set up dummy accounting records to reflect the interest, principal, and monthly payments due to the Defendants

_____

[4] As described in the Complaint, "Image Masters deposited all payments received on account of the Wrap Amounts into an Image Masters account (the "Account"), commingling the Wrap Amounts paid by all Homeowners with all other funds derived from the Debtors' collective businesses . . .." Complaint, ¶46. "Snyder and Image Masters used the commingled Wrap Amounts deposited in the Image Masters Account to keep the Ponzi Scheme alive and to prolong the Debtors' insolvent business, using the Wrap Amounts from new Wrap Around customers to pay the mortgage obligations of prior customers, as well as the salaries, office expenses, and overhead for Snyder's businesses, and the personal expenses of Snyder and his family." Complaint, ¶47.

under the conventional loans and the interest, principal, monthly payments, and

prepayments that the homeowners believed had been applied to pay the conventional

loans.  Image Masters provided the homeowners with monthly statements[5] that showed a

reduction in their Image Masters Note and Mortgage equal to the wrap amount (which

had not been paid by Image Masters on account of, or to reduce, the principal of the

conventional loans). The monthly statements also showed a credit for that month's

mortgage payment to Image Masters plus any additional principal submitted to Image

Masters by the homeowner.

       The homeowners did not receive statements from Defendants on the

conventional loans, however, because Image Masters required that the homeowners sign

change of address forms directing Defendants to send all correspondence regarding the

conventional loans to Image Masters.  Image Masters also sent each homeowner an

Internal Revenue Service Form 1098 at the end of each year, specifying the amount of

interest the homeowner could deduct.  The interest amounts set out on the 1098 form

from Image Masters matched the amounts reflected on the monthly statements Image

Masters prepared and sent to the homeowners.  Image Masters never delivered the "real"

1098 forms from Defendants on the conventional loans to the homeowners.  The "real"

1098 forms that had been mailed to Image Masters by Defendants were intercepted by

---

[5] These monthly statements were fabricated and fraudulent, of course, because they did
not accurately reflect the amount that Image Masters had paid to the Defendants on the
conventional loans.

Snyder or one of Debtors' employees.

At some time, in an attempt to generate additional funds to keep his Ponzi scheme alive, Snyder devised a new program, known as the "Wrap Around Participation Program." To fund his new scheme, Snyder persuaded individuals to invest funds with Image Masters or co-Debtor Mortgage Assistance Professionals. The investors were told that they would receive security interests in certain of the Image Masters Mortgages. In reality, however, the investors were never granted valid, perfected security interests in any Image Masters Mortgages and no such security interests were ever recorded. Again, Snyder used the funds he received from these new investors to perpetuate his Ponzi scheme.

Snyder's Ponzi scheme eventually collapsed when Snyder and Debtors were unable to generate income or receive new funds/investments sufficient to remain current on the homeowners' conventional loans with Defendants.

On November 9, 2007, the United States Attorney for the Middle District of Pennsylvania charged Snyder with mail fraud arising from his orchestration of this Ponzi scheme.[6] In the Information against Snyder, the United States Attorney alleged that, of the $65.6 million received from the homeowners and investors, Snyder forwarded only $39.1 million to Defendants for payment of the conventional mortgages. Id. ¶13. Snyder pled guilty to these charges and was sentenced on July 2, 2008, by the Honorable Yvette

---

[6] See Complaint, "Exhibit A:" Information charging Snyder with mail fraud docketed to United States v.Snyder, Crim. A. No. 1-07-CR-450 (M.D. Pa.).

8

Kane to serve 146 months in federal prison and to make restitution to the victims of his

Ponzi scheme in the amount of $29,267,080.

# III.  THE  TRUSTEE'S  COMPLAINT

The Trustee's Complaint alleges that because Snyder was the sole

shareholder of Debtors, his actions and intentions must be imputed to them.  The

Complaint then alleges that during the four-year period before Debtors filed their

bankruptcy petitions, Image Masters made transfers to each of the Defendants in the

following aggregate amounts:

| | |
|---|---|
| (A) Defendant, Chase Home Finance: | $1,853,923.84; |
| (B) Defendant, Citimortgage, Inc.: | $3,534,498.35; |
| (C) Defendant, Countrywide Home Loans, Inc.: | $3,743,876.80; |
| (D) Defendant, Fifth Third Bank: | $  585,747.35; |
| (E) Defendant, GMAC Mortgage Corp.: | $   83,356.07; |
| (F) Defendant, Provident Funding Associates, L.P.: | $  123,813.28; |
| (G) Defendant, Saxon Mortgage, Inc.: | $   14,727.96; |
| (H) Defendant, Sovereign Bancorp, Inc.: | $  312,141.28; |
| (I) Defendant, Suntrust Bank: | $9,172,387.96; |
| (J) Defendant, Wachovia Bank, N.A.: | $   46,951.00; and |
| (K) Defendant, Wells Fargo Home Mortgage: | $ 4,081,017.47. |
| | $23,552,441.36. |

These transfers were calculated from the payments made by Image Masters

to Defendants on behalf of the homeowners pursuant to (1) the terms of the homeowners'

conventional loans with the Defendants and (2) Image Masters' contractual obligation to

the homeowners (a) to pay the regular payments due for the conventional loans and (b) to

keep the conventional loans current.  The Trustee first alleges that these transfers are

avoidable as constructively fraudulent transfers under both the Bankruptcy Code, 11

10

U.S.C. §§544 & 548(a)(1)(B), and PUFTA, 12 Pa. C.S. §5104(a)(2), because Image

Masters allegedly did not receive reasonably equivalent value in exchange for the

transfers. The Trustee alternatively claims that these transfers are avoidable as fraudulent

transfers under the Bankruptcy Code, 11 U.S.C. §§544 & 548(a)(1)(A), and the PUFTA,

12 Pa. C.S. §§5104(a)(1) & 5105, because they were allegedly made by Image Masters

with actual intent to hinder, delay or defraud creditors of Image Masters. The Trustee

alleges that the transfers that were made within ninety days before the bankruptcy filings

(in the aggregate amount of $1,292,273.10) are also avoidable as preferential transfers

under the Bankruptcy Code, 11 U.S.C. §547(b).[7] Finally, the Trustee requests that any

proofs of claim filed by Defendants be disallowed until Defendants pay the amounts of

the allegedly avoidable transfers to the Trustee.

---

[7] Defendants' Motions To Dismiss do not attack the sufficiency of the Trustee's Section 547(b) claims under either Fed. R. Civ. P., Rule 9 or Rule 12.

# IV.  DEFENDANTS' MOTIONS TO DISMISS

## A. DEFENDANTS' MOTIONS TO DISMISS COUNTS I, II, AND IV (THE CONSTRUCTIVE FRAUD COUNTS) OF THE COMPLAINT

Defendants first argue that the constructive fraud counts of the Complaint (Counts I, II and IV) must be dismissed under Fed. R. Civ. P., Rule 12(b)(6)[8] because the Trustee fails to state claims upon which relief can be granted. These three Counts purport to establish claims under the constructive fraud provisions of the Bankruptcy Code, 11 U.S.C. §548(a)(1)(B),[9] and PUFTA, 12 Pa. C.S. §§5104(a)(2)[10] and 5105.[11]  Defendants

---

[8] As stated above, Fed. R. Bankr. P., Rule 7012(b) makes Fed. R. Civ. P., Rule 12(b)(6) applicable to adversary proceedings in bankruptcy cases.

[9] 11 U.S.C. §548(a)(1)(B) states:

§548.  Fraudulent transfers and obligations

(a)(1)  The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-

    *  *  *

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

    (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor

12

maintain that the allegations in the Complaint, even when deemed to be true and viewed in the light most favorable to the Trustee, show that Image Masters received reasonably equivalent value in exchange for each of the transfers to the Defendants. The

---

was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

[10] 12 Pa. C.S. §5104(a)(2) states:

§5104. Transfers fraudulent as to present and future creditors

(a) General rule.--A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

* * *

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

[11] 12 Pa. C.S. §5105 states:

§5105. Transfers fraudulent as to present creditors

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

13

constructive fraud counts of the Complaint, they maintain, must therefore be dismissed.

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556-57 & 570 (2007), the

Supreme Court announced the new standard that courts must apply when deciding a Rule

12(b)(6) motion to dismiss a complaint. The Supreme Court recently expanded further

upon the <u>Twombly</u> standard in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50

(2009)(internal quotations and citations omitted), when it stated:

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true, to "state a
> claim to relief that is plausible on its face." A claim has facial
> plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged. The
> plausibility standard is not akin to a "probability
> requirement," but it asks for more that a sheer possibility that
> a defendant has acted unlawfully. Where a complaint pleads
> facts that are "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility and plausibility
> of 'entitlement to relief.'"
> Two working principles underlie our decision in <u>Twombly</u>.
> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal
> conclusions. Threadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements, do not suffice.
> . . . Rule 8 marks a notable and generous departure from the
> hyper-technical, code-pleading regime of a prior era, but it does
> not unlock the doors of discovery for a plaintiff armed with
> nothing more than conclusions. Second, only a complaint that
> states a plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will, as the Court of Appeals observed, be a context-specific
> task that requires the reviewing court to draw on its judicial
> experience and common sense. But where the well-pleaded facts

14

do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

To state a claim for avoidance of a transfer based upon constructive fraud under both the Bankruptcy Code,11 U.S.C. §548(a)(1)(B), and PUFTA, 12 Pa. C.S. §§5104(a)(2) and 5105, therefore, the Trustee must allege facts sufficient to show that Image Masters received less than a reasonably equivalent value in exchange for the payments it made to the Defendants.   Mellon Bank v. Official Committee of Unsecured Creditors (In re R.M.L., Inc.), 92 F.3d 139, 144 (3d Cir. 1996)(under section 548(a) of the Bankruptcy Code, a plaintiff bears the burden of proving that the debtor received less than reasonably equivalent value in exchange for the transfer)(citing BFP v. Resolution Trust Corp., 511 U.S. 531, 535 (1994)); Fidelity Bond and Mortgage Co. v. Brand, 371 B.R. 708, 719-20 (E.D. Pa. 2007)("The constructive fraud provisions of the PUFTA and the Bankruptcy Code should be construed and interpreted uniformly because consistency between the two statutes was a goal of those who drafted the PUFTA and who have since interpreted it.  * * *  Federal courts, including the Third Circuit, have consistently held that the party challenging a transfer as fraudulent carries the burden of proving by a preponderance of the evidence all elements of a constructive fraud claim brought under Section 548 of the Bankruptcy Code.").

## 1. Reasonably Equivalent Value.

Determining if reasonably equivalent value was given in exchange for a transfer requires two steps. First, I must determine whether Image Masters received <u>any</u> value in exchange for the transfers of funds to Defendants. If I find that Image Masters received some value, I must then decide whether the value received was reasonably equivalent to the value that Image Masters relinquished when it transferred the funds. <u>R.M.L.</u>, 92 F.3d at 152.

### a. Value was received by Debtors for the transfers of funds to Defendants.

Regarding the first prong of this test, the Bankruptcy Code defines "value" to include "satisfaction . . . of a present or antecedent debt of the debtor." 11 U.S.C. §548(d)(2)(A). The Trustee admits, in Paragraph 95 of the Complaint, that each of "the transfers was made for or on account of antecedent debt owed by Image Masters to [the] Homeowners before such transfer was made."[12] In addition, from my review of the Complaint, the exhibits attached thereto, and the exhibits attached to Defendants' Motions To Dismiss[13] I see that the Trustee has pleaded that Image Masters made the

---

[12] Paragraph 95 of the Complaint refers only to those transfers made within ninety days before the date Debtors filed these Chapter 7 petitions. The only difference between the transfers made within the ninety-day period and all other transfers in the Complaint is that the other transfers were made outside the ninety-day preference period. Other than this single difference all transfers are identical and were made to Defendants on account of the obligations owed by Image Masters to the homeowners.

[13] I may consider, when deciding a Rule 12(b)(6) motion to dismiss, undisputedly authentic documents attached as exhibits to a complaint or to a motion to dismiss if the documents are "<u>integral to or explicitly relied</u> upon in the complaint." <u>In re Burlington Coat</u>

16

transfers of funds to Defendants in satisfaction of the homeowners' obligations to the

Defendants under the conventional loans. See Complaint, ¶¶32, 34, 35, 36, 47, & 95.

That is, Image Masters was obligated to the homeowners to pay the homeowners'

conventional loans to Defendants and to keep them current. See Complaint, Exhibit A

(Information filed by the United States against Snyder in United States v.Snyder, Crim. A.

No. 07-450 (M.D. Pa. Nov. 9, 2007)), at ¶¶8 & 9; Exhibit C (Transcript of Snyder's

November 28, 2007 Guilty Plea ["N.T."]) at 24; see also Motion To Dismiss Complaint

filed by Countrywide Home Loans, Inc., et. al. (docket entry 26), Exhibits D, E and F;

Motion To Dismiss Complaint filed by Defendant, Citimortgage, Inc. (docket entry 28),

Exhibit 6; Motion To Dismiss Complaint filed by Defendant, Provident Funding,

Associates, L.P. (docket entry 39), Exhibit B.

I have reviewed the Complaint, its exhibits, and the undisputably authentic

exhibits attached to the Motions To Dismiss. Those documents show me that each Image

---

Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997)(citation omitted)(emphasis in original); Fed. R. Civ. P., Rule 10(c).

As Judge Giles explained, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Jones v. ABN Amro Mortgage Group, Inc., 551 F. Supp. 2d 400, 405 (E.D. Pa. 2008)(Giles, U.S.D.J.) quoting Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(internal citations omitted). My consideration of such documents does not convert the motion to dismiss into a motion for summary judgment because "by relying on the document, the plaintiff is on notice that the document will be considered." Lum v. Bank of America, 362 F.3d 217, 222 (3d Cir. 2004).

Masters transfer to a Defendant reduced Image Master's contractual debt to the

homeowner under the Image Masters Mortgage by an amount equal to the amount of the

transfer.  Id.

Consequently therefore, Image Masters received "value" in exchange for

the transfers it made to the Defendants and the first prong of the "reasonably equivalent

value" test is satisfied.[14]

### b.  The value received by Debtors from Defendants was more than reasonably equivalent - the value was actually equivalent.

I turn now to the second prong of the "reasonably equivalent value" test.  I

find and conclude that the Complaint, its exhibits, and the other undisputedly authentic

exhibits[15] establish that Image Masters received, in exchange for the transfers to

Defendants, value not only reasonably equivalent to the value of the transfers, but value

---

[14] Because neither Image Masters nor any of the other Debtors owed a direct obligation to
Defendants, the Trustee argues, neither Image Masters nor any of the other Debtors received a
reduction or satisfaction of an obligation when the transfers were made.  The law does not
require that a debtor's direct obligations to the recipient of the transfer be reduced, however, to
satisfy the "reasonably equivalent value" test.  Rather, "reasonably equivalent value can come
from one other than the recipient of the payments, a rule which has become known as the indirect
benefit rule."  Harmon v. First American Bank of Maryland (In re Jeffrey Bigelow Design Group,
Inc.), 956 F.2d 479, 485 (4th Cir. 1992).  As the Third Circuit recognized, "in evaluating whether
reasonably equivalent value has been given the debtor under section 548, indirect benefits may
also be evaluated.  If the consideration [debtor] received from the transaction, even though
indirect, approximates the value it gave [to the transferee], this can satisfy the terms of the
statute."  Mellon Bank v. Metro Communications, Inc., 945 F.2d 635, 646 (3d Cir. 1991) ;see
also  Jeffrey Bigelow Design, 956 F.2d at 485; Rubin v Manufacturers Hanover Trust Co., 661
F.2d 979, 991-92 (2d Cir. 1981).

[15] See note 13, supra, (recognition and consideration of undisputedly authentic exhibits to
the Motions To Dismiss).

18

that was actually equivalent.

      Neither the Bankruptcy Code nor PUFTA define the term "reasonably

equivalent value." The Third Circuit Court, however, has explained that "a party receives

reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"

VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007) quoting Pension

Transfer Corp. v. Beneficiaries Under the Third Amendment to Freuhauf Trailer Corp.

Retirement Plan (In re Freuhauf Trailer Corp.), 444 F.3d 203, 213 (3d Cir. 2006); Mellon

Bank v. Metro Communications, Inc., 945 F.2d 635, 647 (3d Cir. 1991). "The focus of the

inquiry . . . is the specific transaction the trustee seeks to avoid, i.e., the quid pro quo

exchange between the debtor and transferee, rather than an analysis of the transaction's

overall value to a debtor as it relates to the welfare of the debtor's business." Balaber-

Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp., 256 B.R. 664,

678 (Bankr. S.D.N.Y. 2000). Neither may the focus (when determining value) be on the

general fraudulent nature of the debtor's Ponzi scheme. Daly v. Deptula (In re Carrozzella

& Richardson), 286 B.R. 480 486-91 (D. Conn. 2002); Balaber-Strauss, 256 B.R. at 680-

82; see also Sharp Int'l. Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.),

403 F.3d 43, 56 (2d Cir. 2005).

      The Complaint, the Image Masters Notes and Mortgages, the subrogation

agreements,[16] and the Trustee's admissions during oral argument[17] all clearly show beyond peradventure that for each transfer from Image Masters to a Defendant, Image Masters received in return an equal dollar-for-dollar reduction in its liability to the homeowners under the Image Masters Notes and Mortgages. I reiterate that this is so because: (1) Image Masters had contractually agreed with the homeowners to pay the regular monthly amounts due on the conventional mortgages with Defendants and to keep them current; and (2) each transfer to a Defendant constituted a disbursal to or for the benefit of the homeowner as the advance of the wrap amount, which Image Masters owed to the homeowner. See Complaint, ¶47; Exhibit C (N.T. Snyder Guilty Plea) at 24-25).

The Complaint and exhibits show that each time Image Masters made a transfer to a Defendant it received in return, not "roughly the value it gave," VFB, 482 F.3d at 631, but the actual, equivalent value it gave. The second prong of the reasonably equivalent value test is therefore satisfied.

## 2. Pleading Less Than Reasonably Equivalent Value.

The Trustee presses, however, and argues that she adequately pled lack of reasonably equivalent value in her Complaint. The relevant allegations in the Complaint consist primarily of bald legal conclusions such as "Image Masters received no value

---

[16] See note 13, supra, (undisputedly authentic exhibits to the Motions To Dismiss).

[17] See Transcript of July 1, 2009 Oral Argument ("N.T.") at 84:9-22; 129:13-15.

whatsoever in exchange for the Transfers alleged in this case – let alone reasonably

equivalent value . . ..." Complaint, ¶72; see also Complaint, ¶¶78 & 88.[18]   The Supreme

Court has proscribed that "[a] pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.' . . . Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."

Ashcroft, 129 S.Ct. at 1949 (internal quotations omitted).   But that is precisely what the

Trustee's Complaint alleges here  –  a threadbare, formulaic recitation of the elements of a

cause of action for avoidance of a transfer based on constructive fraud.

The Complaint lacks sufficient factual matter to state a claim to relief for

avoidance of the transfers based on constructive fraud that is plausible on its face.   Id.;

Twombly, 550 U.S. at 570.   I must therefore grant Defendants' Motions To Dismiss the

constructive fraud counts of the Complaint and I will dismiss Counts I, II, and IV through

the accompanying Order.[19]

---

[18] I need not accept such allegations because "the tenet that a court must accept as true all
of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft, 129 S.
Ct. at 1949.

[19] The Trustee also argues that the question whether reasonably equivalent value was
received by a debtor in exchange for a transfer is a factual question that can never be decided on
a Rule 12(b)(6) motion to dismiss.  None of the Defendants dispute the factual allegations
contained in the Complaint on this issue. I regard the facts (but not the legal conclusions) alleged
by the Trustee to be true and I view them in the light most favorable to the Trustee. The facts,
however, show that for each transfer of a conventional loan payment from Image Masters to a
Defendant, Image Masters received in return more than "roughly the value it gave," because it
received an equivalent, dollar-for-dollar reduction in its liability to the homeowner under the
Image Masters Notes and Mortgages and under the subrogation agreements. This dollar-for-
dollar reduction in liability constitutes reasonably equivalent value under the Third Circuit's test.
VFB, 482 F.3d at 631. The allegations of the Complaint, therefore, simply do not "state a claim

# B.  DEFENDANTS' MOTIONS TO DISMISS COUNTS I AND III (THE ACTUAL FRAUD COUNTS) OF THE COMPLAINT.

## 1.  The allegations in the Complaint establish Defendants' affirmative defense of good faith and value received.

Counts I and III of the Complaint seek to avoid the transfers at issue under

different subsections of both the Bankruptcy Code, 11 U.S.C. §548(a)(1)(A),[20] and

PUFTA, 12 Pa. C.S. §5104(a)(1)(A),[21] on the ground that they were made with actual

---

to relief [for avoidance of a transfer based on constructive fraud] that is plausible on its face."
Ashcroft, 129 S. Ct. at 1949.  Other courts have ruled that, as a matter of law, they may
determine that a debtor received reasonably equivalent value in exchange for an allegedly
fraudulent transfer.  See e.g., Lustig v Weisz and Associates, Inc. (In re Unified Commercial
Capital, Inc., 260 B.R. 343, 353-54 (Bankr. W.D.N.Y. 2001); and Balaber-Strauss, 256 B.R. at
680-82..

[20] 11 U.S.C. §548(a)(1)(A) states:

§548.  Fraudulent transfers and obligations

(a)(1).  The trustee may avoid any transfer (including any transfer to or for the benefit of
an insider under an employment contract) of an interest of the debtor in property, or any
obligation (including any obligation to or for the benefit of an insider under an
employment contract) incurred by the debtor, that was made or incurred on or within 2
years before the date of the filing of the petition, if the debtor voluntarily or
involuntarily–

(A) made such transfer or incurred such obligation with actual
intent to hinder, delay, or defraud any entity to which the debtor
was or became, on or after the date that such transfer was made or
such obligation was incurred, indebted; or

[21] 12 Pa. C.S. §5104(a)(1)(A) states:

§5104. Transfers fraudulent as to present and future creditors

intent to hinder, delay or defraud creditors.  Defendants argue that these counts must be

dismissed under Fed. R. Civ. P., Rule 12(b)(6) because the Complaint itself establishes a

good faith defense for Defendants under both 11 U.S.C. §548(c)[22] and 12 Pa. C.S.

§5108(a) & (d).[23]  Defendants maintain that these Counts therefore fail to state claims for

---

(a) General rule.--A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; . . .

[22] U.S.C. §548(c) states:

§548. Fraudulent transfers and obligations

* * *

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

[23] 12 Pa. C.S. §5108(a) & (d) state:

§5108. Defenses, liability and protection of transferee

(a) Certain transfers or obligations not fraudulent. – A transfer or obligation is not fraudulent under section 5104(a)(1) (relating to transfers fraudulent as to present and future creditors) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

* * *

(d) Rights of good faith transferee or obligee. – Notwithstanding voidability of a transfer or an obligation under this chapter, a good faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to:

> (1) a lien on or a right to retain any interest in the asset transferred;

> (2) enforcement of any obligation incurred; or

23

avoidance of intentionally fraudulent transfers that are plausible on their face.  Both of

these latter two sections, Section 548(c) and Section 5108(a) & (d), establish that a

transferee who receives the transfer in exchange for value and in good faith has a defense

to an action to avoid the transfer based on actual fraud.  That is, even if the Trustee could

prove that the Debtors made a transfer actually intending to defraud creditors, she would

be unable to recover against a Defendant who received the transfer for value and in good

faith.  Balabar-Strauss, 256 B.R. at 676.  Defendants have the burden, of course, of

proving that they received the transfers for value and in good faith as an affirmative

defense to the Trustee's causes of action.  Nevertheless, "a complaint may be subject to

dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face."

Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) quoting ALA, Inc. v. CCAIR, Inc., 29

F.3d 855, 859 (3d Cir. 1994).

       For the reasons that follow, I find and conclude that even accepting every

allegation in the Complaint and exhibits as true and viewed in the light most favorable to

the Trustee, Defendants received the transfers for value and in good faith.  First, it is

abundantly clear from my review of the Complaint, the exhibits, and the Trustee's

concessions that Defendants accepted the transfers in good faith.  The Defendants were

not part of or aware of the artifice and scheme concocted by Snyder and Debtors.  The

Complaint alleges that none of the Debtors executed any documents with any of the

---

(3) a reduction in the amount of the liability on the judgment.

24

Defendants obligating the Debtors to make payments to Defendants and none of the

Debtors had a contractual relationship with any of the Defendants.  Complaint, ¶¶37 & 38.

In fact, counsel for the Trustee conceded during oral argument that "there is no

relationship between the debtor and these lenders."  N.T. Oral Argument at 81:13-14.

> Furthermore, the Complaint includes, as Exhibit A, the Criminal Information

filed against Snyder by the United States Attorney.  The Information recognizes that the

Defendants were also <u>actual victims</u> of the Ponzi scheme orchestrated by Snyder and the

Debtors.  <u>See</u> Complaint, Exhibit A (Information) at ¶19: "[Defendants'] ability to receive

and collect their mortgages has been jeopardized by Snyder's actions."   Nothing in the

Complaint suggests that Defendants were in any way connected with the Ponzi scheme

operated by Snyder and Debtors or that Defendants actually acted with anything less than

good faith when they received the transfers from Image Masters.

> The Complaint does allege, at paragraph 62:

> > Upon information and belief, Defendants knew or should
> > have known of the underlying fraud being perpetrated by Snyder
> > (and Image Masters) and those working at his direction because,
> > <u>inter alia</u>, all of the payments received by Defendants came from
> > a single source and single account in the form of checks drawn
> > on the account of and authorized by Image Masters, rather than
> > the Homeowners.  Indeed, as evidenced by the list of transfers
> > identified on Exhibits D through N, each Defendant received
> > multiple checks in any given month.  In addition, each Defendant
> > received multiple change of address forms directing that all
> > correspondence for each Homeowner be forwarded to a P.O. Box
> > in Oley, Pennsylvania, "c/o OPFM, Inc."

The Complaint also alleges, at paragraph 64:

> Upon information and belief, the Defendants accepted the
> Transfers with actual or constructive knowledge of the frauds
> being committed by Image Masters. At best, Defendants'
> behavior [i.e., never questioning the single source of payment or
> any of the aforementioned actions], represents a deliberate and
> conscious avoidance on the Defendants' part to discover the fraud
> or to learn the truth. Such "ostrich-like" behavior was, at a
> minimum reckless, and lacked good faith.

As I will examine in more detail below, these allegations amount to nothing

more than conclusions of law that I need not accept as true. Ashcroft, 129 S. Ct. at 1949.

Furthermore, they are both (1) insufficient to satisfy the requirement of Fed. R. Civ. P.,

Rule 9(b) that pleadings relating to fraud be set forth with particularity and (2) based on

some unstated, incorrect legal assumption that Defendants had some legal duty to

investigate and learn more about Image Masters.

As directed by the Supreme Court, I draw on my judicial experience as a

United States Bankruptcy Judge faced with dozens of mortgage issues each week as well

as on my plain common sense. Ashcroft, 129 S. Ct. at 1950. I find and conclude that the

Trustee's argument that Defendants should be deemed to have known about the Ponzi

scheme solely because they were receiving payments on the homeowners' conventional

loans from a single source (i.e., an Image Masters' account) to be disingenuous. This is

particularly so, given the receipt and computerized administration of thousands of

mortgage payments that a mortgage lender will receive from its customers each month.

The reality of current mortgage business practices leads me to recognize that mortgagees

26

routinely receive mortgage payments directly from mortgage servicing companies, their

customers' bank or brokerage accounts, and other aggregating financial institutions rather

than directly from the mortgagors.  Simply stated, the Trustee's allegations fail to state in

any way that Defendants acted in anything other than in good faith.

The issue of value, which I discussed extensively in my analysis of

constructive fraud above, is also at issue here.  I therefore reiterate my previous finding

and conclusion that the Complaint and the exhibits establish that Image Masters received

not merely reasonably equivalent value, but received actually equivalent value in exchange

for the transfers to Defendants.

As a result, I find that Counts I and III of the Complaint fail to state claims

to avoid the transfers on the ground of actual fraud under either Section 548(a)(1)(A) the

Bankruptcy Code or Section 5104(a)(1)(A) of PUFTA, because it is evident that

Defendants received the transfers for equivalent value and in good faith.   I must therefore

grant Defendants' Motions To Dismiss the actual fraud counts of the Complaint and I will

dismiss Counts I and III through the accompanying Order.


## 2.  Allegations of fraud should be dismissed for failure to plead them with particularity.

Alternatively, Defendants argue that if I determine that the averments in

Counts I and III do not establish the defense of value and good faith, the fraud counts must

be dismissed because they do not plead fraud with the particularity required by Fed. R.

27

Civ. P., Rule 9(b).[24]  Rule 9(b) applies to claims brought in federal courts under both

bankruptcy and state law to avoid a transfer based upon actual fraud.  See, e.g., Bratek v.

Beetle Juice, LLC,  No. Civ. A. 04-4491, 2005 WL 3071750, at *6 (E.D. Pa. Nov. 14,

2005); OHC Liquidating Trust v. Nucor Corp. (In re Oakwood Homes Corp.), 325 B.R.

696, 698 (Bankr. D. Del. 2005).

       Rule 9(b) requires that a party who alleges fraud or mistake "state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P., Rule 9(b).

Compliance with Rule 9(b) requires "more than broad assertions by the plaintiff." Hassett

v. Zimmerman (In re O.P.M. Leasing Services, Inc.), 32 B.R. 199, 203 (Bankr. S.D.N.Y.

1983).  To satisfy Rule 9(b), a plaintiff must plead with particularity the circumstances of

the alleged fraud to place the defendants on notice of the precise misconduct with which

they are being charged and to safeguard defendants against spurious charges of immoral

and fraudulent behavior.  Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004).

       To state a claim against a defendant for the avoidance of a transfer based on

actual fraud, therefore, a plaintiff must allege with particularity that the debtor made the

transfer with actual intent to hinder, delay or defraud a creditor.  See 11 U.S.C.

§548(a)(1)(A); 12 Pa. C.S. §5104(a)(1)(A).  To meet this standard, a plaintiff must plead

the requisite fraudulent intent with respect to each transfer sought to be avoided and must

connect the allegations against the defendant to the debtor's scheme to defraud creditors.

---

[24] As I stated earlier, Bankruptcy Rule 7009 makes Federal Rule 9 applicable in
bankruptcy adversary proceedings.

Sharp Int'l, 403 F.3d at 56; Silverman v. Actrade Capital, Inc. (In re Actrade Fin'l

Technologies Ltd.), 337 B.R. 791, 808-10 (Bankr. S.D.N.Y. 2005).  Because intent to

defraud is frequently difficult to allege and prove, courts have permitted specific

allegations of certain factors, known as the "badges of fraud," to satisfy the Rule 9(b)

particularity requirement. Sharp Int'l., 403 F.3d at 56; Actrade Fin'l., 337 B.R. at 809; see

also Holber v. Dolchin, Slotkin & Todd, P.C. (In re American Rehab & Physical Therapy,

Inc.), Adv. No. 04-0847 (Bankr. No. 04-14562), 2006 WL 1997431, at *15-16 (Bankr.

E.D. Pa. May 18, 2006).  These badges of fraud include whether:

> (1) The transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property
> transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred,
> the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was
> reasonably equivalent to the value of the asset transferred or
> the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after
> the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a
> substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business
> to a lienor who transferred the assets to an insider of the
> debtor.

American Rehab, 2009 WL 1997431, at *15-16.

Only two paragraphs in the Complaint set forth allegations that could

possibly constitute the pleading of a "badge of fraud." Both are conclusory statements and

both seem to be directed to the ninth "badge of fraud." but are insufficient to satisfy Rule

9(b):

> 71.  At the time of the Transfers, (i) Image Masters was
> engaged in a business for which its remaining assets were
> unreasonably small in relation to the business; or, in the
> alternative, (ii) Image Masters intended to incur, or believed or
> reasonably should have believed that it would incur, debts
> beyond its ability to pay as they became due.
> * * *
> 77. At the time of the each of the Transfers, Images Masters
> was either insolvent or was rendered insolvent as a result of
> the transfer.

Complaint, ¶¶71 & 77.[25] These allegations, without more, are insufficient to satisfy Rule

9(b). The Complaint also alleges, at paragraph 62, that Defendants knew or should have

known about the Ponzi scheme because all of the payments received by Defendants came

from a single source and single account – from Image Masters. The Complaint also

alleges at paragraph 64 that Defendants accepted the Transfers with actual or constructive

knowledge of the frauds being committed by Image Masters.

---

[25] The Complaint contains other bald, conclusory allegations that, "[i]n exchange for each
of the Transfers, Image Masters received no value whatsoever – let alone reasonably equivalent
value." Complaint, ¶¶78 & 88. See also Complaint, ¶72. These allegations might provide an
example of a badge of fraud. But I regard these statements as threadbare, formulaic recitals of
the legal elements of a cause of action that do not suffice to state a claim to relief that is plausible
on its face. Ashcroft, 129 S. Ct. at 1249.
Furthermore, I previously found that the Complaint, the Image Masters Notes and
Mortgages, the subrogation agreements, and the Trustee's admissions during oral argument all
establish that Image Masters did in fact receive actually equivalent value in exchange for each of
the transfers it made to Defendants. These allegations, therefore are insufficient to satisfy the
Rule 9(b) requirement that intent to defraud be pleaded with particularity. Lum, 361 F.3d at 223-
24; O.P.M. Leasing, 32 B.R. at 203.

These allegations amount to nothing more than conclusions of law that I need not accept as true. Ashcroft, 129 S. Ct. at 1949. They are also insufficient to satisfy the requirement of Rule 9(b) that fraud be pleaded with particularity, because allegations of fraud based "on information and belief" do not satisfy the heightened pleading required by that Rule. Bratek, 2005 WL 3071750, at *7; River Road Dev. Co. v. Carlson Co., Civ A. No. 89-7037, 1990 WL 69085, at *10 (E.D. Pa. May 23, 1990); Arpet, Ltd. v. Homans, 390 F. Supp. 908, 912-13 (W.D. Pa. 1975). Moreover, the Trustee's allegation that Defendants should have known of Image Masters' fraudulent Ponzi scheme is based on a false legal assumption that Defendants had some unspecified duty to investigate Image Masters. Defendants' only contractual relationship was as the mortgagee-lenders of the homeowners. A mortgagee owes no fiduciary duty to a mortgagor. Caplen v. Security Nat'l. Servicing Corp., 514 F. Supp. 2d 746, 752 (E.D. Pa. 2007); I & S Assocs. Trust v. LaSalle Nat'l. Bank, No. Civ. A. 99-4956, 2001 WL 1143319, at *7 (E.D. Pa. Sept. 27, 2001).

The Complaint does not allege any of the other badges of fraud, even as a legal conclusion. This case is therefore wholly distinguishable from the case relied upon by the Trustee, United States v. Rocky Mountain Holdings, Inc., Civil Action No. 08-3381, 2009 WL 564437, at *7 (E.D. Pa. March 4, 2009). The District Court in Rocky Mountain Holdings denied a motion to dismiss an intentional fraudulent transfer complaint because the complaint adequately alleged facts that showed several of the badges of fraud,

31

including allegations that the defendants were insiders of the transferor, that the transferor transferred its essential assets to a lienor who then transferred them to an insider, and that the transfer constituted substantially all of the transferor's assets. Unlike <u>Rocky Mountain</u>, the Trustee's Complaint is vague and fails to adequately allege sufficient factual badges of fraud to state a claim for relief that might be plausible on its face.

The Trustee does not allege in the Complaint that any of the Defendants were involved in, or aware of, the lending relationship between Image Masters and the homeowners or that any of the Defendants entered into a financial relationship with Snyder, Image Masters or some other Debtor. Nor does she allege that Defendants acted in some fraudulent, unlawful, or wrongful manner. In fact, the Trustee acknowledges that no Debtors executed any documents with any of the Defendants, which documents might directly obligate them to make payments to Defendants; and no Debtor had any direct contractual relationship with any of the Defendants. Complaint, ¶¶37 & 38.[26] Consistent with these allegations, counsel for the Trustee conceded during oral argument that "there is no relationship between the debtor and these lenders." N.T. Oral Argument at 81:13-14. Simply stated, the Complaint fails to contain any factual allegations that (1) show the requisite fraudulent intent for any transfer sought to be avoided or (2) connect Defendants

---

[26] Further evidence that the Complaint fails to connect Defendants with Debtors' fraudulent scheme is found in Paragraph 19 of the Information attached as Exhibit A to the Complaint. At paragraph 19, the United States Attorney characterizes Defendants as victims of Debtors' fraudulent scheme and alleges that "as financial institutions, [Defendants'] ability to receive and collect their mortgages has been jeopardized by Snyder's actions."

with the fraudulent Ponzi scheme orchestrated by Snyder and the Debtors.

The Trustee relies instead upon the fraudulent manner in which Snyder and Debtors operated their Ponzi scheme to defraud the homeowners. I agree, to the contrary, with the cases described immediately below. These courts examined a trustee's attempt to avoid a transfer made by a debtor who was operating a Ponzi scheme. In each of the cases, the court concluded that the general fraudulent intent underlying the Ponzi scheme was insufficient to establish the fraudulent transfer cause of action.

Instead, a plaintiff must set forth factual allegations of fraudulent intent in connection with the specific transfer sought to be avoided and must show some direct connection between a defendant and a debtor's fraudulent Ponzi scheme. See Carrozzella & Richardson, 286 B.R. at 490 ("the proper focus of a fraudulent transfer inquiry is on the transfer itself, not the overall business practices of the Debtor"); Balaber-Strauss, 256 B.R. at 680 (a trustee cannot base a fraudulent transfer claim on the theory that, because Debtor operated a Ponzi scheme, all transfers made by Debtor qualify as actual or constructively fraudulent transfers); see also Sharp Int'l., 403 F.3d at 56 (affirming the dismissal of an intentional fraudulent conveyance complaint under Rule 12(b)(6) because the fraud alleged in the complaint relates to the manner in which the debtor obtained new funding from other creditors, not the debtor's subsequent payment of part of the proceeds to the defendant).

The court in Actrade Fin'l, described a situation very similar to the one

33

before me:

> It is recognized that in an intentional fraudulent conveyance
> case the relevant inquiry is whether the transferee knew of the
> transferor's intent to defraud his creditors "in any way." The
> transferee "need not have actual knowledge of the scheme that
> renders the conveyance fraudulent"; [sic] constructive knowledge of a
> scheme to defraud will suffice. However, the [trustee] has failed
> to allege with sufficient specificity in the Complaint facts that show
> that [transferee] was complicit with or had knowledge of an
> intentional scheme to defraud creditors of [debtor].

337 B.R. at 810 (emphasis in original) (citations omitted). This is especially true when, as

is the case here, the transfer was to a third party who was neither an investor nor in any

other way directly involved in the Ponzi scheme. As the court explained at length in

Balaber-Strauss:

> The fatal legal flaw in this postulate, as a matter of
> fraudulent conveyance analysis, is that it focuses not on a
> comparison of the values of the mutual consideration actually
> exchanged in the transaction between the [defendant] and the
> Debtor, but on the value, or more accurately stated, the
> supposed significance or consequence of the [defendant]-
> Debtor transaction in the context of the Debtors' whole Ponzi
> scheme. But . . . the statutes and case law do not call for the
> court to assess the impact of an alleged fraudulent transfer in a
> debtor's overall business. The statutes require an evaluation of
> the specific consideration exchanged by the debtor and the
> transferee in the specific transaction which the trustee seeks to
> avoid, and if the transfer is equivalent in value, it is not subject
> to avoidance under the law.

> Not every transaction which has the effect of
> "exacerbating the harm to creditors by increasing the amount
> of claims while diminishing the debtor's estate" is a fraudulent
> conveyance. Section 548 is not a catch-all provision. It allows

34

the trustee to avoid only the transfers prescribed by the statute.

. . .

The Trustee's theory ignores the actual transaction between Debtor and [defendant] and the undisputed equivalence in value between the [transfer] and the [defendant's] services, and instead focuses on collateral conduct of the Debtors' management (the overall operation of the Ponzi scheme), which is extraneous to any particular transaction between Debtor and [defendant]. To say that . . . [defendant's] transaction conferred no value on the Debtors is fiction insofar as the particular transaction itself is concerned. Fraudulent conveyance law, under both state and federal statutes, is concerned with the reality of whether the transferee conferred equivalent value on the debtor <u>in the transaction sought to be avoided</u>. The fact that the debtor's enterprise as a totality is operated at a loss, or in a manner that is fraudulent, does not render actually or constructively fraudulent a particular transaction which in and of itself is not fraudulent in any respect.

* * *

Fraudulent conveyance law is grounded in equity and is designed to enable a trustee or creditors to avoid a transfer in a transaction where the transferee received more from the debtor than the debtor received from the transferee. The remedy of avoidance seeks to rectify the disparity between that which the transferee gave and that which the transferee got in the transaction. It is this disparity that makes it equitable to require the transferee to repay the excess in value of what he received over what he gave up in the transaction.

In this case there was no disparity between the [transfers] and the value of the [defendants'] services. Equity, and the law, would be ill-served by granting relief on these complaints.

256 B.R. at 680-82 (footnotes omitted)(emphasis in original). I accept and endorse the

discussion and rationale in both <u>Actrade</u> and <u>Balaber-Strauss</u>.

I recognize that Judge Carey, when a Judge in this District, ruled that a plaintiff can rely upon the general fraudulent intent inherent in a Ponzi scheme to satisfy the "actual intent to defraud" element of an intentional fraudulent transfer. But his holding applied only when the transferee did not take the transfer in good faith and for reasonably equivalent value. See Liebersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, L.P.), 280 B.R. 103, 111 (Bankr. E.D. Pa. 2002) ("It is also reasonable, and, in this case, appropriate, to infer that, except for transfers to a person who took in good faith and for a reasonably equivalent value, . . . all other transfers made by the debtor during an on-going Ponzi scheme are part of the overall fraud.") (emphasis added).

Judge Carey identified the precise reason that the case before me differs dramatically from C.F. Foods. The transferee in the C.F. Foods decision was a charitable organization that admittedly received the transfer without having provided reasonably equivalent value to the debtor. I find C.F. Foods inapposite because it involved facts that are very different from those before me. The Trustee's Complaint shows that Defendants received the transfer both in good faith and for actually equivalent value. This removes the Image Masters case that is before me from any similarity with C.F. Foods. Nevertheless, however, I agree with and endorse the cases that I discuss at length above,[27] which expressly hold that the general fraudulent nature of the Ponzi scheme does not provide the requisite intent to support a cause of action for an actually fraudulent transfer.

---

[27] See pp. 33 - 35, infra (discussing Carrozzella, Balaber-Strauss, and Actrade).

In the case before me, the Trustee fails to plead actual intent with regard to the specific fraudulent transfers that she seeks to avoid.  She fails to allege any facts that show that Defendants (1) knew of, or were in any way connected to, the Ponzi scheme conducted by Snyder and orchestrated by Debtors or (2) committed any wrongdoing when they accepted the homeowners' regular monthly payments from Image Masters.  The Trustee's reliance on her unexplained assumption that somehow and some way Defendants should have known about or investigated Debtors' fraudulent Ponzi scheme is insufficient to meet the requirements of Rule 9(b).  This is so especially in light of the Supreme Court decisions in <u>Ashcroft</u> and <u>Twombly</u> that teach:

> Two working principles underlie our decision in <u>Twombly</u>.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,  supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the reviewing court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

<u>Ashcroft</u>, 129 S. Ct. at 1949-50 (internal quotations and citations omitted).  As instructed by the Supreme Court, I draw on my judicial experience as a Bankruptcy Judge and on my common sense in reviewing the Trustee's allegations.  The Trustee's conclusion that Defendants should be deemed to have known about the Debtors' Ponzi scheme simply

because they were receiving payments on the homeowners' mortgages from a single

source (Image Masters) is ill-conceived. Again, this is particularly so given the volume

and reality of current business practices in the mortgage industry.[28]

I must therefore grant Defendants' Motions To Dismiss Counts I and III,

which seek to avoid the transfers based upon actual fraud, because I find and conclude that

they fail to state a claim for relief that is plausible on its face and fail to plead fraud with

particularity as required by Rule 9(b). I will therefore dismiss Counts I and III through the

accompanying Order.

---

[28] The allegations in the Complaint show little more than that Defendants are seen to be
deep pockets that had no involvement whatsoever with Snyder's or the Debtors' Ponzi schemes.
Defendants had no reason to suspect that the homeowners with whom they had contracted had
engaged Snyder and Image Masters to service their mortgages with Defendants through the
fraudulent Ponzi scheme and machinations that they had created.

# C.  DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT FOR FAILURE TO JOIN INDISPENSABLE PARTIES

Finally, Defendants have moved to dismiss all counts of the Complaint under Fed. R. Civ. P., Rules 12(b)(7)[29] & 19[30] because the homeowners are necessary parties who have not been joined in this action.   The party requesting joinder of a necessary party must show that at least one of the grounds under Rule 19 exists.  <u>Whyham v. Piper Aircraft Corp.</u>, 96 F.R.D. 557, 560 (M.D. Pa. 1982).

---

[29] Fed. R. Civ. P., Rule 12(b)(7), which is made applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P., Rule 7012(b), states:

> (b) How to Present Defenses.  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:
> * * *
> (7) failure to join a party under Rule 19.

[30] Fed. R. Civ. P., Rule 19(a), which is made applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P., Rule 7019, states:

> (a) Persons Required To Be Joined If Feasible.
> (1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction much be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

## 1. Homeowners' have a strong interest in the subject matter because their payments to Defendants might be avoided.

Defendants first argue that the homeowners are necessary parties under Fed. R. Civ. P., Rule 19(a)(1)(B)(i) because they have an interest in the subject matter of this proceeding, and because disposing of this proceeding without joining them as parties would impair or impede their ability to protect that interest. I agree. Clearly, the homeowners have a very substantial interest in the subjects of this proceeding – the mortgage accounts that the homeowners have with Defendants. The Trustee seeks to recover over $23 million in monthly payments made to Defendants for the homeowners' mortgage accounts. If the Defendants pay any of those payments back to the Trustee, the potential ramifications against the homeowners are obvious. They might be called upon to reimburse Defendants for the payments that Defendants returned. I have no doubt that adjudicating this action in the absence of the homeowners could, as a practical matter, impair or impede their ability to protect their interests.

As I mentioned above, if the transfers are avoided, Defendants might very well assert claims against the homeowners for either or both (1) immediate payment (again) of the full amount of all avoided transfers or (2) declare defaults for none payment under the terms of the conventional loans. It is well established that, after a transfer is avoided, the parties are returned to the status quo ante. The parties would be placed in a position as if the transfers had never been made. See, e.g., Security First Nat'l. Bank v. Brunson (In re Coutee), 984 F.2d 138, 141 (5th Cir. 1993) (avoidance of debtor's payment

to bank on note did not extinguish a third party's guaranty of the note and the guarantor

was liable to the bank on the guaranty); Centre Ins. Co. v. SNTL Corp. (In re SNTL

Corp.), 380 B.R. 204, 213 (B.A.P. 9th Cir. 2007) ("[T]he return of a preferential payment

by a creditor generally revives the liability of a guarantor."); Herman Cantor Corp. v.

Central Fidelity Bank (In re Herman Cantor Corp.), 15 B.R. 747, 750 (Bankr. E.D. Va.

1981) ("Although a surety usually is discharged by payment of the debt, he continues to be

liable if the payment constitutes a preference under bankruptcy law. A preferential

payment is deemed by law to be no payment at all.").

      A number of courts have required the joinder of potential parties (such as the

homeowners) for a variety of reasons. Specifically, potential parties' interests would be or

might be compromised and prejudiced unless they had the right to appear in the forum

within which they could address the transfers and the effect of avoiding them at the time

that a court was deciding whether to avoid the transfers. See, e.g., Ocean Petroleum, LLC

v. Shri Sharti, Inc., Civil Action No. 08-4322, 2008 WL 5423484, at *3 (E.D. Pa. Dec. 29,

2008)(McLaughlin, U.S.D.J.); Mumma v. Randolph, Civil Action No. 1:98-CV-0087,

2008 WL 719352, at *3 (M.D. Pa. March 14, 2008) (Rambo, U.S.D.J.); and Pasternak v.

Burns, Civil Action No. 06-1818, 2007 WL 2323128, at *2 (E.D. Pa. Aug. 9,

2007)(Sanchez, U.S.D.J.).

      I therefore find and conclude that the homeowners are necessary parties in

this litigation under Fed. R. Civ. P. 19(a)(1)(B)(i).

## 2. Potential for contradictory decisions to subject Defendants or homeowners to possible double or otherwise unwarranted losses.

I also agree with Defendants that the homeowners are necessary parties under Rule 19(a)(1)(B)(ii) because the Trustee's failure to join the homeowners could leave either Defendants or homeowners subject to a substantial risk of incurring double, multiple, or otherwise inconsistent, contradictory, and unwarranted obligations. The homeowners' interest in the subject of this proceeding is quite clear. Every dollar that Defendants are forced to surrender to the Trustee might later be said to reduce the payments made on account of the homeowners' conventional loans. The homeowners might then be obliged to pay to Defendants (again) their loan payments. Alternatively, if the homeowners are somehow exonerated from reimbursing Defendants for the legitimate conventional loan payments that were paid to Defendants, the Defendants would be prevented from collecting otherwise legitimate monthly payments from the homeowners.

The homeowners have filed two separate class action suits against Defendants. First, <u>Jones v. ABN Amro Mortgage Group, Inc. et al.</u>, was filed in the Berks County Court of Common Pleas and removed to the United States District Court for the Eastern District of Pennsylvania at Docket No. 2:07-cv-04328-JG. Second, <u>Lorah v. SunTrust Mortgage, Inc.</u>, was also filed in the Berks County Court of Common Pleas and was also removed to the United States District Court for the Eastern District of

Pennsylvania at Docket No. 5:08-cv-00703-CDJ.[31]  If this case proceeds without joinder of

all lenders and all homeowners, parallel proceedings would exist involving construction of

the same loan contracts.  Defendants or homeowners could be subject to potentially

different, potentially duplicative, and potentially inconsistent interpretations and

determinations regarding their rights and obligations as lenders and borrowers.  See

generally Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 705-06 (3d Cir. 1996);

Wilson v. The Canada Life Assurance Co., No. 4:08-CV-1258, 2009 WL 532830, at *3-4

(M.D. Pa. March 3, 2009);  GMBB, Inc. v. Travelers Indemnity Co., 100 F. Supp. 2d 465,

470 (E.D. Mich. 2000); Rainbow Trucking, Inc. v. Ennia Ins. Co., 500 F. Supp. 96, 98-99

(E.D. Pa. 1980).

     I therefore find and conclude that the homeowners are necessary parties in

this litigation under Fed. R. Civ. P. 19(a)(1)(B)(ii).


## 3.  Defendants are not judicially estopped from raising the necessary parties defense.

     The Trustee counters that Defendants should be judicially estopped from

pressing their necessary parties argument because, in December 2007, they opposed a

motion by the homeowners to transfer the Jones case from the District Court to this

Bankruptcy Court.  I disagree.

---

[31] The Jones complaint was dismissed by the District Court (the dismissal is currently on
appeal at Docket No. 08-2353).  On March 20, 2009, the defendant bank in Lorah filed a motion
to dismiss the complaint.  This motion to dismiss remains pending.

Judicial estoppel bars a party from asserting a position that is inconsistent with one he or she previously took before a court or agency. The Third Circuit Court has ruled:

> Three requirements must be met before a . . . court may properly apply judicial estoppel. First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith - i.e., with intent to play fast and loose with the court." Finally, a . . . court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001)(citations omitted).

First, the positions advanced by Defendants in the two proceedings are not irreconcilably inconsistent. By opposing the homeowners' motion to transfer the Jones proceeding to this court, Defendants argued that the Jones proceeding was not "related to" the Debtors' bankruptcy case at that time. A successful recovery by the homeowners in the Jones proceeding, they argued, would not impact the Debtors' bankruptcy estates. See Trustee/Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions To Dismiss, filed on June 10, 2009 (docket entry 56), Exhibit B (Defendants' Opposition to Plaintiffs' "Expedited Motion for Transfer to Bankruptcy Court") at pp. 9-13. This is a fundamentally different position than Defendants now advance before me. Defendants now argue that the homeowners are necessary parties in this particular litigation because it

44

will impact both Defendants and homeowners, possibly in duplicative or contradictory ways, if the homeowners are not joined.

Second, the Trustee has neither alleged, argued, nor established that Defendants changed positions "in bad faith" in order to "play fast and loose with the court." <u>Montrose</u>, 243 F.3d at 779.  Third, preventing the homeowners' joinder in this litigation is certainly not a remedy tailored to address the harm raised by the Trustee's failure to join them.  Denying their joinder would exacerbate and increase the possibility of inconsistent and contradictory effects on the parties.  Furthermore, I find no "misconduct" on the part of the Defendants for which I must find some remedy.

I therefore find and conclude that Defendants are not judicially estopped from seeking dismissal of this proceeding under Rule 12(b)(7) for failure to join the homeowners as necessary parties.

## 4.  Plaintiffs should be granted leave to add necessary parties.

My determination that necessary parties have not been joined in this

proceeding under Rule 19(a)  does not, however, require dismissal of the proceeding.

Dismissal is only required if I find that the absent parties cannot be joined and are

indispensable under Rule 19(b).  The homeowners are necessary parties who are subject to

service of process; they are subject to personal jurisdiction in this Court; and resolution of

the issues in this litigation within this Court's subject matter jurisdiction.  Therefore, they

can, and must, be joined under Rule 19(a).  Because I find that the homeowners are

subject to joinder, I need not consider whether they are indispensable under Rule 19(b).[32]

See generally Angst, 77 F.3d at 705.  Rather, the proper relief is to direct that the Trustee

join the homeowners as parties to this proceeding.  See Rainbow Trucking, 500 F. Supp. at

98-99; see also Angst, 77 F.3d at 706; Mumma v. Randolph, Civil Action No. 1:98-CV-

0087, 2008 WL 719352, at *3 (M.D. Pa. March 14, 2008); GMBB, 100 F. Supp. 2d at

470.

---

[32] Fed. R. Civ. P., Rule 19(b) states, in pertinent part:

Rule 19.  Required Joinder of Parties
* * *
(b) When Joinder Is Not Feasible.  If a person who is required to be joined if
feasible cannot be joined, the court must determine whether, in equity and in good
conscience, the action should proceed among the existing parties or should be
dismissed. . . .

46

# V.  CONCLUSION

For all of the reasons stated in the Memorandum above, I will enter an order:

(1) Granting Defendants' Motions To Dismiss Counts I, II, and IV of the Complaint,

which purport to allege claims to avoid the transfers based on constructive fraud; (2)

granting Defendants' Motions To Dismiss Counts I and III of the Complaint, which

purport to allege claims to avoid the transfers based on actual fraud; (3) conditionally

denying Defendants' Motions To Dismiss the Complaint under Fed. R. Civ. P., Rule

12(b)(7), provided that the Trustee join the homeowners as parties to this proceeding

within thirty (30) days from the date of the Order; and (4) granting the Trustee thirty (30)

days to file an Amended Complaint that is consistent with the provisions of this

Memorandum Opinion.

An appropriate Order follows.

Date: December 17, 2009                         BY THE COURT

                                                Richard E. Fehling
                                                U.S. Bankruptcy Judge